## Hughes v. Louisville, Henderson & St. Louis Railway Company and Robinson, Daniels & Sons.

(Decided March 16, 1917.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. Master and Servant—Control of Explosives.—Where the master himself has control of forces or explosives calculated to endanger life, the obligation is upon him to control or superintend them. He is under an obligation to use proper care to avoid injury to employees by reason thereof. If he substitutes another to represent him in their care and control, the same obligation remains upon him.

2. Explosives—Liability for Injuries From.—Where the top or lid of a box, filled with acid is so constructed or maintained that it does not afford reasonable protection to employees, required in the course of their employment to be near and about it, the employer is liable for injuries to employees because of such unsafe construction or maintenance.

WALTER E. HUFFAKER for appellant.

JAMES R. SKILLMAN, HELM & HELM and GIBSON & CRAWFORD for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Joseph Hughes, a colored man, forty-five years of age, had been employed for several years as a hod carrier for the appellee, Robinson, Daniels & Sons, who were contractors engaged in brick construction.

While this colored man was employed in carrying iron and other material for the construction of a boiler for the defendant railroad company in its yards, he was injured by falling into a vat of dangerous acid located in and near the place where he was at work, and over and near which he had to pass. He was in the employment of Robinson, Daniels & Sons, who were erecting the boiler under contract with the Louisville, Henderson & St. Louis Railway Company, and upon the premises of the railroad company. He had been engaged at this work about eight or nine days.

The space where he worked was small, being triangular in shape, surrounded by buildings, between which was located the vat containing the dangerous acid. This vat was made of metal, and stood about ten or twelve inches above ground, and so near the walls of the building that the passageway was only eighteen or twenty inches wide. The vat was about six feet long and thirty-eight inches wide, and had a lid or covering of metal. In order to perform his work, appellant, Hughes, had to pass by, or over this vat, carrying the metals required in the construction of the boiler. The metal was in large, heavy sheets, requiring the strength of two men to carry. The metals were on one side of the vat, and the boiler was being erected on the other side. Hughes and another colored man were carrying a heavy load of iron to be used in the construction of the boiler, and were working under the direction of the foreman. In passing this vat, the one in front passed around and through the narrow passway at the edge of the vat, while Hughes, being at the rear, and the sheet of metal being wide, was forced to step a little to one side, and in doing so, stepped upon the edge of the vat, which gave way and his leg went into the acid, severely burning and injuring him. Hughes did not know what was in the vat or how the top was fastened onto it, and had in the course of his employment walked over and across the vat many trips in the performance of his duties. Just how the top of the vat gave way, or why, is not made clear by the evidence. This vat was on the premises of the railroad company and contained a highly dangerous instrumentality. Hughes, however, was in the employment of Robinson, Daniels & Sons, and this firm was in the employment of the railroad company, constructing the boiler under contract.

The lower court, at the conclusion of the eivdence for the plaintiff, sustained a motion for peremptory instructions in defendants' favor. In fact, two trials were had with like results. Motion and grounds for a new trial were filed, and being overruled, Hughes prosecutes this appeal.

The plaintiff rests his case upon the principle that the acid in the vat was a highly dangerous substance, which it was the duty of the railroad company and its agents, Robinson, Daniels & Sons to carefully guard by the exercise. of that degree of care, usually employed by prudent persons, using such dangerous instrumentalities, for the protection of their servants whose employment requires them to pass over or near the dangerous substance.

As was said in C., N. O. & T. P. Ry. Co. v. Padgett, 158 Ky. 303.

"It is the duty of persons who keep in their possession or employ in their business, that which unless carefully guarded and cautiously used is dangerous to others, to exercise such care to see that the dangerous agency is so kept and used as not to inflict injury upon others as an ordinarily prudent person would be expected to exercise in the use and keeping of such dangerous agency. See Merschel v. L. & N., 121 Ky. 620, 85 S. W. 710, 27 R. 465; Pittsburg, etc. v. Shields, 47 Ohio St. 387, 24 N. E. 658, 8 L. R. A. 464, 21 Am. St. Rep. 840; Rush v. Spokane Falls & Nor. R. Co., 23 Wash. 501; 26 Cyc 1112."

And in Merschel v. Louisville & Nashville Railroad Company, it was said:

"If the master himself has control of forces or explosives calculated to endanger life, the obligation is upon him to control or superintend them. He is under an obligation to use proper care for the protection of life and property therefrom. If he substitutes another to represent him in their care and control, the same obligation remains upon him. And in Thompson on Negligence, vol. 1, sec. 523, it is said:

"Every person who employs highly dangerous agencies upon his premises or about his business, stands under the obligation of exercising, to the end that third persons shall not be injured through those agencies, a degree of care proportionate to the danger of such in-

jury. This court has recognized the rules announced by the authors quoted as being correct.''

Hughes, while seeing the vat and its location, did not know its contents, nor the dangerous nature thereof, nor did he know that the lid or top over which he had passed and which appeared to be solid and substantial, was defective or likely to give way.

It was the duty of the appellees to provide Hughes and other employees a reasonably safe place in which to perform the work at which they were engaged. To have and maintain a vat containing such a dangerous substance, in the midst of the working place, not fully protected, and without warning employees of the danger from coming in contact with the fluid therein, was not an exercise of reasonable care on the part of the master.

In the case of Cincinnati, N. O. & T. P. Ry. Co. v. Fortner (not officially reported), 113 S. W. 847, this court in considering facts very similar to those presented in this case, said:

''It is true that plaintiff in his testimony shows that he knew the position of the box, and perhaps knew the contents of it; but it utterly fails to show that he knew the box top was not securely fastened so as to prevent an inadvertent step from removing the top and precipitating the foot of any unwary employee in the highly dangerous fluid contained therein. On the contrary, we think the evidence shows without contradiction that the appellee thought the box was securely fastened. The men habitually walked over it, and there is testimony in the record that more than once before the accident in question, the top had been knocked off by some employee's foot inadvertently coming in contact with it, although the appellee did not know this. . . . . Here the employee knew the position of the box, but saw it was covered and apparently secure. The business of the employer and its rules required him, in company with several hundred other employees, to come in close proximity with this box. He had a right to assume that so dangerous a thing was securely fastened. Now, if this box had been open and fully exposed to view, with hot steam arising from the acid, bringing home to the employees the dangers of stepping in it, then the case would be within the principle announced in Wilson's Administrator v. Chess & Wymond Company,

*supra;* but here with the top on, and apparently secure, the box constituted a veritable trap for the foot of the unwary workman, whose duty calls him about it.''

There is little or no difference between the facts in the case at bar and those in the case of C., N. O. & T. P. Ry. Co. v. Fortner, *supra,* and the reasoning employed in that opinion appears sound. We, therefore, conclude that appellees failed to exercise that degree of care which was due the plaintiff, Hughes, under the facts and circumstances, and the trial court erred in sustaining a motion for peremptory instruction to the jury to find and return a verdict for the two companies.

For the reasons indicated the judgment is reversed for a new trial and other proceedings not inconsistent with this opinion.